**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT, EASTERN DIVISION**

| | | |
|---|---|---|
| C.M., an individual,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD GLEASON, in his official and individual capacity, and SAL INDOMENICO,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) | Case No.:<br><br>Trial by Jury is Demanded. |

## COMPLAINT

NOW COMES the Plaintiff, C.M., an individual, by and through his attorneys LAW OFFICES OF RICHARD M. CRAIG, P.C., and for his Complaint against Defendants RICHARD GLEASON, in his official and individual capacity, and SAL INDOMENICO, states as follows:

### Preliminary Statement

This is principally a civil rights action brought under 42 U.S.C. §1983 to hold accountable attorney RICHARD GLEASON ("Gleason"), Litigation Group Manager with the Illinois Attorney Registration and Disciplinary Commission, for his unreasonable, unlawful and malicious violations of Plaintiff's rights, as well as his unlawful civil conspiracy with Defendant SAL INDOMENICO ("Indomenico"). Plaintiff is an attorney of good standing in the State of Illinois, and has been for over three decades. During that time, including over 25 years where he ran his own practice, his license to practice law was never suspended, revoked, or otherwise jeopardized. After clerking for a judge on the Supreme Court followed by a near-decade-long employment with a large Chicago law firm, Plaintiff opened his own private practice in September 2000. Over 25 years later, in the summer of 2025 he decided to close that practice at the end of October 2025 and enter into semi-retirement, accepting modest employment with a law firm in his home town.

In September 2025, while Plaintiff was in the midst of winding down his law practice and enter into semi-retirement, the Illinois Attorney Registration and Disciplinary Commission ("the ARDC") sent a communication to Plaintiff advising that a Request for Investigation had been initiated by Indomenico, purportedly at the behest of one of Plaintiff's former clients, concerning litigation that had been settled almost 1.5 years prior. Plaintiff requested 28 days within which to retain counsel to represent him in the inquiry, noting the significant length of time since the subject litigation had been settled and the fact that he was concurrently winding down his practice. That request was denied, and the ARDC demanded an answer to the Request for Investigation within seven (7) days.

Despite the unreasonably short period of time provided, Plaintiff timely responded to the request. Because it was impossible to both retain counsel and to get that counsel apprised of the matter within the seven days afforded by the ARDC, he did so *pro se*. Shortly thereafter, the ARDC deluged Plaintiff with requests for more information, including demands for Plaintiff's mental and physical health records. Plaintiff had not raised either his mental or physical health in any effort to respond to the Request for Investigation, and therefore expressed confusion as to why the ARDC was seeking these records. Plaintiff also inquired whether the ARDC would commit to keeping the health records confidential, for ARDC eyes only. The ARDC offered no comment on why the mental and physical health records were requested and would not commit to keeping the records confidential (including keeping them confidential from non-expert laypeople such as Indomenico or the Complainants themselves).

In December 2025, when the ARDC would not explain why it was seeking his mental and physical health records and would not commit to keeping them confidential from people outside of the ARDC, Plaintiff declined to provide those records. In so doing, he again noted that they

were irrelevant to the Request for Investigation and reiterated his concern over the ARDC's refusal to commit to their confidentiality. The ARDC renewed its request in January 2026, and Plaintiff again declined to provide those records.

In February 2026, Gleason (who was assigned the investigation) sent Plaintiff electronic correspondence requesting that Plaintiff contact him by telephone. Plaintiff complied and spoke with Gleason the same day. During that phone conversation, Gleason advised Plaintiff that it "would go really badly" for him if he did not provide the mental and physical health records.

Plaintiff's only marketable skill is the practice of law. He is the principal breadwinner in his household. Without his income, his family could not make their monthly mortgage payment (which is why he is only semi-retired). Without the employment he secured after closing his office, his wife and four children would lose their health insurance. When Gleason advised Plaintiff that it "would go really badly" for him if he did not tender his mental and physical health records, Plaintiff understood that Gleason would use the power and purse of the State of Illinois to preclude his ability to perform his single marketable skill. In response to this ultimatum, Plaintiff relented and sent HIPAA Authorizations the same day.

Plaintiff's insight that his mental and physical health records were and are irrelevant has been borne out. The ARDC has not raised either in any assertion that Plaintiff improperly conducted himself in the practice of law. More concernedly, in addition to the irrelevancy of the medical records being borne out, Plaintiff's concern that his mental and physical health records would be shared with members outside the ARDC has been borne out. Specifically, Gleason shared the mental and physical health information with Indomenico, in an effort to put his thumb on the scale of litigation contemplated by Indomenico to be filed against Plaintiff. Specifically, while Gleason was conducting a confidential investigation under the auspices of the ARDC's oversight

authority, he was leaking the confidential information that he obtained to Indomenico in preparation for litigation to be filed by Indomenico against Plaintiff. It is Plaintiff's belief that the plan between Gleason and Indomenico is to style all counts against Plaintiff so that insurance coverage is not implicated, and then share in their ill-gotten recovery after exhausting Plaintiff's financial ability to defend against Indomenico's litigation.

Gleason's motivation is both personal and pecuniary, whereas Indomenico's motivation is simply pecuniary. Gleason harbors animosity to Plaintiff because of his political beliefs. After practicing for nearly 35 years with his license intact and unchallenged, Plaintiff became the focus of the above-described inquiry only after he agreed to represent a woman in a controversial and politically charged civil matter concerning abortion. Defendant's attack on Plaintiff's only means of employ is one of "barfare," a current political trend in the American legal system where left-leaning members of state bar disciplinary committees such as the ARDC attempt to discredit and destroy right-leaning members of the bar such as Plaintiff. In addition to waging barfare against Plaintiff over his political leanings, Gleason also harbors animosity in general to people who have autoimmune deficiency diseases, as Plaintiff does. Gleason's obsession with Plaintiff's medical records (as set forth in details in the allegations *infra*) is otherwise inexplicable.

To this day, Plaintiff encounters anxiety for the gross violation of his rights and turns to this Honorable Court in pursuit of justice.

**Jurisdiction and Venue**

1. This Complaint seeks remedies pursuant to 42 U.S.C. §§1983 and 1988, alleging violations of the Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110 Stat. 1936 (Aug. 21, 1996) (codified in various sections of the U.S. Code, including 42 U.S.C. § 201) and the HITECH Act of 2009, 42 U.S.C. §§ 300jj *et seq*.; §§ 17901 *et seq*.

2. Jurisdiction is conferred upon this Honorable Court pursuant to 28 U.S.C. §§1331, 1343 and 1367.

3. Venue is proper before this Honorable Court pursuant to 28 U.S.C. §1391(b), as the cause of action arose in Cook County, Illinois, which is wholly within the Northern District of Illinois, Eastern Division.

**Parties**

4. The Plaintiff C.M. (hereinafter "Plaintiff") is an attorney licensed by the State of Illinois, and a resident of Cook County Illinois.

5. At all times relevant hereto, Gleason was employed by the ARDC. His title is Litigation Group Manager, and he works out of the Chicago office in Cook County, Illinois.

6. Indomenico is an attorney licensed by the State of Illinois, who practices law in, *inter alia*, Cook County, Illinois.

**Facts Common to All Counts**

7. In September 2025, Plaintiff received Notice of a Request for Investigation ("the Request") from the ARDC. The Request was submitted by Indomenico, who complained that Plaintiff had committed attorney malpractice in his representation of a former client ("Jane Doe") in litigation that had settled almost 1.5 years prior.

8. Plaintiff responded to Notice described in Paragraph 7 *supra* by requesting 28 days within to retain counsel and substantively respond to the Request. In so doing, he advised that he was in the process of winding up his private practice of over 25 years, and also pointed out that Jane Doe's case had settled well over a year prior.

9. The ARDC denied Plaintiff's request for time to retain counsel and demanded that he respond to the Request within seven (7) days.

10. Plaintiff timely responded to the Request. Because it was impossible to both retain counsel and to get that counsel apprised of the matter within the seven days afforded by the ARDC, he did so *pro se*. In so doing, he *inter alia* denied that he had committed malpractice, pointed out the implausibility that the alleged conduct constituted malpractice, and requested that the ARDC take no further steps against him. Alternatively, Plaintiff requested a stay of the proceedings until any negligence litigation initiated by Jane Doe was resolved.

11. The ARDC did not respond to either request. Instead, it deluged Plaintiff with further requests for information, all with deadlines too short to allow for the retention of counsel to review and analyze the requests and the investigation as a whole, and allowed the tenor of the complained of acts to shift from an assertion of legal malpractice (which basically amounted to a failure to counsel Jane Doe to lie in her deposition) to one of breach of contract.

12. Plaintiff timely responded to each of the supplemental requests for information, again *pro se* because of the strict deadlines imposed, each time complying with every request except for the ARDC's demand that he divulge his physical and mental health records ("the Physical and Mental Health Records Request").

13. With regard to the Physical and Mental Health Records Request, Plaintiff repeatedly expressed confusion as to the relevance of his physical and mental health records. Throughout the fourth quarter of 2025, while responding to the series of requests, Plaintiff also repeatedly requested that deadlines be extended to afford him time to obtain a lawyer. The ARDC never responded to the requests for time to obtain counsel, nor did it ever extend its deadlines. Instead, it issued serial requests for more information, each with unreasonably short deadlines which were insufficient to obtain counsel and learn whether he had any rights whatsoever, including rights to object to their production or raise any other concern.

14. In December 2025, the ARDC reiterated its Physical and Mental Health Records Request. In response, Plaintiff stated an intention to begrudgingly comply with the request if the ARDC would commit to keep the records confidential from people outside the ARDC. However, the ARDC refused to commit to the confidentiality of any medical records received in response to its Physical and Mental Health Records Request.

15. In January 2026, the ARDC renewed the Physical and Mental Health Records Request. Plaintiff again declined to provide the requested records, principally on the basis that the ARDC would not commit to keeping the records confidential, but also on the reiterated basis that his physical and mental health records were wholly irrelevant to the ARDC's inquiry. Plaintiff further stated that he would agree to submit the records, despite their irrelevance, if the ARDC would reverse itself and commit to their confidentiality.

16. On or around February 27, 2026, Gleason sent electronic correspondence to Plaintiff requesting that Plaintiff call him on the telephone.

17. Plaintiff complied with Gleason's request and called him on the same day.

18. During the telephone conference that occurred between the parties on February 27, 2026, Gleason advised Plaintiff that it "would go very bad for him" if Plaintiff did not relent and submit the records requested in the Physical and Mental Health Records Request.

19. In light of the unambiguous threat made by Gleason that Plaintiff would be jeopardizing his law license if he did not submit to the Physical and Mental Health Records Request, Plaintiff relented and submitted HIPAA Authorizations the same day.

20. The ARDC continued to refuse a commitment to keep any records received pursuant to the Physical and Mental Health Records Request confidential. Plaintiff only relented because Gleason made clear that his license to practice law would be jeopardized by maintaining

his refusal to provide the health records requested.

21. To be clear, Plaintiff's physical and mental health records are wholly irrelevant to the Requests.

22. Gleason sought the physical and mental health records, not for any reason related to the Requests, but rather to determine if they could be the basis to discredit Plaintiff's ability to practice law, either because of the medications he takes to address his autoimmune deficiency disease or on the basis of mental health care he received in 2025, the need for which arose because the decline of his physical health was accelerating rapidly.

23. Gleason also sought the physical and mental health records to determine if any could be leaked to Indomenico to assist Indomenico in litigation that Indomenico was contemplating filing against Plaintiff.

24. Gleason's desire to discredit Plaintiff was part of an ongoing "barfare" phenomenon occurring in the United States, where left-leaning members of disciplinary commissions attempt to shame and revoke the law licenses of right-leaning attorneys (for instance, John Easton in California). See Report by *Democracy Restored* at democracyrestored.org.

25. The allegation immediately *supra* is in based in part on the fact that, after nearly 35 years of practicing law without any challenge to his law license, the Request (which arose out of litigation that had been settled for over a year) occurred shortly after Plaintiff agreed to represent a woman in a controversial and politically charged civil matter concerning abortion.

26. Plaintiff agreed to represent the woman in the controversial and politically charged civil matter concerning abortion that is hereinabove described as a method of acting upon his Roman Catholic faith, an act that is protected by the First and Fourteenth Amendments of the United States Constitution.

27. The above-referenced allegation is also based on Plaintiff's perception that Defendant harbors animosity to people, such as Plaintiff, who have autoimmune deficiency diseases. Gleason's obsession with Plaintiff's medical records is otherwise inexplicable.

**Count I - 42 U.S.C. §1983**
**Violation of Rights Under First and Fourteenth Amendments**
**And Statutes of the United States of America**
**(Versus Gleason)**

1 – 21. For Paragraphs 1 through 21 of Count I, Plaintiff adopts and incorporates Paragraphs 7 – 27 of Facts Common to All Counts as though fully set forth herein.

22. All of Gleason's actions as hereinabove alleged were performed under color of law.

23. Gleason's actions violated the privacy rights of Plaintiff under the Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110 Stat. 1936 (Aug. 21, 1996) (codified in various sections of the U.S. Code, including 42 U.S.C. § 201 note).

24. Gleason's actions violated the privacy rights of Plaintiff under the HITECH Act of 2009, 42 U.S.C. §§ 300jj *et seq.*; §§ 17901 *et seq*.

25. Gleason's actions violated the privacy rights of Plaintiff under the Fourteenth Amendment of the United State Constitution.

26. Gleason's actions violated the freedom of religion rights of Plaintiff under the First Amendment of the United State Constitution.

**Count II**
**Intentional Infliction of Emotional Distress**
**(Versus Gleason)**

1 – 21. For Paragraphs 1 through 21 of Count II, Plaintiff adopts and incorporates Paragraphs 7 – 27 of Facts Common to All Counts as though fully set forth herein.

22. All of Gleason's actions as hereinabove alleged were performed under color of law.

23. By taking steps to jeopardize Plaintiff's only means of providing for his family,

Gleason engaged in actions that were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

24. Gleason acted with the intent to inflict emotional distress.

25. As an alternative to the allegations in Paragraph 24 *supra*, Gleason acted recklessly when it was certain or substantially certain that emotional distress would result from his outrageous conduct.

26. Gleason's actions caused and continues to cause Plaintiff to suffer severe emotional distress, as he was faced with an actor from the State of Illinois who could, with his singular effort, deprive him of the means to provide for his family.

27. The emotional distress was and continues to be so severe that no reasonable person could be expected to endure it.

28. As a direct and proximate result of Gleason's unreasonable and unlawful actions, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including but not limited to medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

29. The actions of Gleason against Plaintiff were carried out with either actual malice or a conscious, reckless and outrageous indifference to the health, safety and welfare of others, thereby justifying an award of punitive damages to the fullest extent permitted by law.

**Count III**
**Civil Conspiracy**
**(Versus All Defendants)**

1 – 21. For Paragraphs 1 through 21 of Count III, Plaintiff adopts and incorporates Paragraphs 7 – 27 of Facts Common to All Counts as though fully set forth herein.

22. Gleason's ARDC investigation of Plaintiff was confidential.

23. The confidentiality notwithstanding, Gleason shared information obtained during the confidential investigation with Indomenico, for the purpose of aiding litigation that Indomenico was contemplating filing against Plaintiff.

24. The actions of Gleason and Indomenico were unlawful.

25. Alternative to the allegations set forth in Paragraph 24 *supra*, the actions of Gleason and Indomenico were a concerted action to achieve a lawful purpose by unlawful means.

26. Indomenico accepted the information obtained by Gleason knowing that the information was obtained during a confidential investigation and knowing that its dissemination to him was unlawful.

WHEREFORE, Plaintiff C.M. prays that this Honorable Court enter judgment in his favor and against Defendants RICHARD GLEASON and SAL INDOMENICO, for compensatory and general damages commensurate with the proofs at trial, punitive damages to the fullest extent of the law, and pre-judgment and post-judgment interest. Plaintiff further prays that this Honorable Court declare Defendant RICHARD GLEASON's actions to be violative of the First and Fourteenth Amendments of the United States Constitution and in violation of the statutes cited herein. Plaintiff further prays for attorney fees, as well as any additional relief that this Honorable Court deems just.

Respectfully submitted,

By: *s/ Richard M. Craig*
Attorney for Plaintiff C.M.

Richard M. Craig
Law Offices of Richard M. Craig
116 S. Arlington Heights Rd.
Arlington Heights, Illinois 60005
312/882-7424
rich@millerberger.com